UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GERMAN SOSA CARDOSO and ALEXI ORTIZ ALVARADO, Individually and on Behalf of All Others Similarly Situated,<br><br>            Plaintiffs,<br><br>        -against-<br><br>A ROYAL FLUSH OF NEW YORK II, INC., A ROYAL FLUSH, INC., WILLIAM MALONE, TIMOTHY BUTLER, and DEBRA RUSSO, Jointly and Severally,<br><br>            Defendants. | Civil Action No. 1:15-cv-07260-ALC<br><br>**JOINT MOTION FOR APPROVAL OF SETTLEMENT**<br><br>VIA ECF |

Plaintiffs German Sosa Cardoso and Alexi Ortiz Alvarado ("Plaintiffs") and Defendants A Royal Flush of New York II, Inc., a Royal Flush, Inc. (collectively "A Royal Flush" or the "Company"), William Malone, Debra Russo and Timothy Butler (collectively, "Defendants") (with Plaintiffs, referenced as the "Parties"), file this Joint Motion for Approval of Settlement and Dismissal with Prejudice of All Claims.

## SETTLEMENT AND DISMISSAL OF CLAIMS

1.　　In this action, *German Sosa Cardoso and Alexi Ortiz, individually and on behalf of all others similarly situated v. A Royal Flush of New York II, Inc., A Royal Flush, Inc., William Malone, Timothy Butler and Debra Russo*, Plaintiffs alleged, *inter alia*, that the Company failed to pay overtime wages in violation of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"), that the company made unlawful wage deductions in violation of the NYLL, and that the Company failed to provide accurate annual wage notices and/or wage statements in violation of the NYLL (the "Amended Complaint").

2.      While the parties continue to dispute whether Plaintiffs are independent contractors or employees, the applicability of the Motor Carrier Act exemption and the amount of overtime wages owed, if any, should Plaintiffs be deemed employees and Defendants continue to deny each and every claim made by Plaintiffs in this action, the Parties desire to fully and finally resolve any and all of Plaintiffs' claims in the action without the expense of further litigation.

3.      In furtherance of the Parties' mutual desire to resolve their dispute without further litigation between them, they have entered into a Settlement Agreement and Release of Claims (the "Agreement"), a copy of which is attached hereto as Exhibit A.  The Parties have agreed to these settlement terms in order to avoid the cost of litigating the action.  By agreeing to these terms, Defendants do not admit that they violated any federal, state, or local law, rule, regulation, or ordinance; that any action taken with respect to Plaintiffs was wrongful or unlawful; or that the Company breached any of its policies or procedures.  The primary purpose of this Motion is to request the Court's approval of the Agreement in accordance with the requirements of the FLSA and the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199 (2d Cir. 2015).  In *Cheeks,* the Second Circuit ruled that: ". . . stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the DOL to take effect." *Id.* at 206.

4.      Thus, the FLSA places certain limits on a current or former employee's ability to waive claims for unpaid wages or overtime under 29 U.S.C. § 216.  With only two exceptions, employees cannot waive FLSA claims for unpaid wages or overtime. The two exceptions are for: (1) settlements approved by the Department of Labor, and (2) judicially-approved stipulated settlements. *Id.*

5.      The Parties represent to the Court that the Agreement: (a) is fair to all Parties; (b) reasonably resolves bona fide disagreements between the Parties with regard to the merits of the Plaintiffs' claims; and (c) demonstrates a good faith intention by the Parties that the Plaintiffs' claims for liability and damages be fully and finally resolved, and not re-litigated in whole or in part at any point in the future.

6.      In *Cheeks*, the Second Circuit did not reach the issue of whether the settlement in that case was worthy of approval. *See Id.* at 203, n.3.  The Parties in this case believe their settlement is fair and reasonable under the factors set forth in *Wolinsky v. Scholastic, Inc.*, 900 F.Supp.2d 332, 335 (S .D.N.Y. 2012) (Furman, J.).

**Plaintiffs' Potential Recovery**

7.      The first *Wolinsky* factor examines "the Plaintiff's range of possible recovery."  In this case, the Company contracted with Cardoso in March 2011 as a driver at an agreed-upon rate of $15.00 per hour until July 2012, when this rate increased to $16.00 per hour.   The Company contracted with Alvarado from June 2011 until March 2015 at an agreed upon rate of $13.00 per hour.

8.      Plaintiffs assert they were improperly classified as independent contractors and were actually employees, and therefore owed overtime for all hours worked in excess of 40 hours per week.  The Parties do not dispute that Plaintiffs were paid straight time for all hours worked.

9.      Cardoso's duties included driving a service truck weighing at least 10,001 pounds from New York to New Jersey from New York to Connecticut.  When not performing interstate driving duties, Cardoso's duties also included cleaning portable toilet units and safely loading the units onto the trucks for interstate transportation.

10.     While contracting with the Company, Alvarado was responsible for loading units onto trucks weighing at least 10,001 pounds at the New York branch to ensure safe transportation to New Jersey.  Alvarado at times traveled with drivers to New Jersey, where he was also responsible for safely loading units back onto trucks for transportation back to the New York branch.  All of the trucks were at least 10,001 pounds and nearly all of them traveled interstate (or could have traveled interstate).

11.     It is Defendants' position that Plaintiffs were independent contractors and, therefore, cannot sustain the claims alleged in the Amended Complaint.  Moreover, Defendants contend that, even if Plaintiffs were "employees" of the Company, they are exempt from overtime pay under the Motor Carrier Act (MCA) exemption.   Under the MCA exemption, employees are not subject to the overtime provisions of the FLSA (or New York law) so long as: (1) the employee must be employed by a motor carrier; and (2) the employee's job duties must "directly affect the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act".  *See* 29 C.F.R. § 782.2-782.6; *Resch v. Krapf's Coaches, Inc.*, 785 F.3d 869, 872 (3d Cir. 2015); *Walters v. Am. Coach Lines of Miami, Inc.*, 575 F.3d 1221, 1227 (11th Cir. 2009) (citing 29 C.F.R. §782.2(a)).  Additionally, the MCA overtime exemption applies not only to drivers, but also applies to loaders.  The MCA defines a "loader" as one whose duties include "the proper loading of . . . motor vehicles so that they may be safely operated on the highways of the country."  29 U.S.C. § 213(b)(1); 29 C.F.R. §§ 782.2(b)(2)(i) and 782.5(a).  The vehicles used by Plaintiffs in performing their job duties constitute "commercial motor vehicles", which is defined – for purposes of this analysis – as having a gross vehicle weight rating or gross vehicle weight of at least 10,001 pounds.  *See* 49 U.S.C. § 13102(14).

12.     Plaintiffs further allege the Company took unlawful deductions for uniform cleaning, in violation of NYLL and, further, failed to provide the required wage notification in violation of NYLL.   While neither party has calculated the alleged money owed for the deductions, such amounts are minimal and Plaintiffs seek a maximum amount of $5,000 each for the alleged failure to provide the wage notification.

13.     Pursuant to the settlement between Plaintiffs and the Company, Plaintiffs will receive $30,000.  This represents the $5,000 penalty for the alleged failure to provide the wage notification, as well as additional compensation for alleged unlawful deductions and liquidated damages.  As set forth above, Defendants believe their defense, based on the MCA exemption, is very strong and the Parties agree that $30,000 represents a fair and reasonable settlement amount for the disputed claims.

**Expense of Continued Litigation**

14.     The second *Wolinsky* factor examines "the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses.'"  Settling Plaintiffs' claims at this point will avoid continuing litigation costs for all Parties.  Cognizant of this, the Parties requested a stay of discovery and postponed exchanging initial disclosures and formal discovery requests in an effort to reach a resolution without incurring significant costs.  Had this action not settled, all Parties would have had to prepare Initial Disclosures, engage in formal written discovery pursuant to Rules 33 and 34 and conduct several depositions including Plaintiffs, the Company's agents, and the individually named Defendants.  In addition, counsel for all Parties anticipated motion practice such as FLSA Collective Certification and Rule 23 Class Certification motions by Plaintiffs and Summary

Judgment and De-certification motions by Defendants. Settlement at this point will obviate such time-consuming and expensive litigation.

**The Risks of Litigation**

15.     The third *Wolinsky* factor examines "the seriousness of the litigation risks faced by the parties." All parties face the risk of losing. Plaintiffs could be found to be independent contractors, not employees, and therefore not entitled to any compensation, including the fines for the Company allegedly violating the NYLL by failing to provide proper wage notifications. Even if deemed to be employees, the Parties risked spending excessive time litigating whether Plaintiffs were exempt under the Motor Carrier Act and therefore, only entitled to the wage notification penalty, which the Company is paying as part of the Agreement. At the same time, Defendants face the inherent risks and expenses imposed by a putative collective and class action and liability for overtime compensation if Plaintiffs were found not to be exempt under the Motor Carrier Act.

**Arm's Length Negotiation**

16.     The fourth *Wolinsky* factor examines "whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel.'" The settlement negotiations took place over several months and consisted of debate concerning the merits and value of Plaintiffs' claims and the Company's defenses. The Company provided Plaintiffs with a detailed letter outlining the applicability of the Motor Carrier Act exemption, as well as executed declarations detailing Plaintiffs' job duties.

17.     All Parties in this matter are represented by competent and experienced counsel. Plaintiffs' counsel, Brent Pelton of Pelton Graham LLC, is highly regarded, has been practicing law since 2001 and specializes in the FLSA and its state law counterparts. Likewise, Defendants

are represented by Littler Mendelson, P.C., one of the leading wage and hour defense firms in the country.  Michael Grosso, Esq. is a Shareholder with the firm and specializes in wage and hour defense.

18.     The Agreement between the Parties provides that Plaintiffs' counsel will receive $10,000 in fees, as part of the total settlement of $30,000.  The retainer agreement between Plaintiffs and their counsel set forth a contingency fee of one-third (1/3) of any settlement plus reimbursement of our actual litigation costs, which comes to a total of $10,662.65. Plaintiffs' counsel requests $10,000, which is less than what was agreed upon in the retainer agreement with Plaintiffs.  This is well within the acceptable range for fees in similar cases.

**Possibility of Fraud or Collusion**

19.     The fifth *Wolinsky* factor examines the "possibility of fraud or collusion."  There is no evidence of any fraud or collusion in this case.  The settlement was only finally achieved after months of negotiations and after Defendants provided declarations and its legal position to Plaintiffs.

**CONCLUSION**

20.     There is no evidence of any factors weighing against approval of this settlement. There is no history of FLSA non-compliance by Defendants.

21.     The Parties respectfully request that the Court approve this settlement as fair and reasonable and enter the proposed Order attached hereto as **Exhibit B**.

**WHEREFORE**, the Parties to this Action respectfully request an Order:

1.      Approving the Agreement between Plaintiffs and the Company; and

2.      Dismissing with prejudice the claims of Plaintiffs against all Defendants.

**PELTON GRAHAM LLC**                    **LITTLER MENDELSON, P.C.**


By:  /s/ Brent E. Pelton                 By:  /s/ Michael T. Grosso
   Brent E. Pelton                          Michael T. Grosso
   Taylor B. Graham                         One Newark Center, 8th Floor
   111 Broadway, Suite 1503                 Newark, NJ  07102
   New York, NY 10006                       Telephone: (973) 848-4700
   Telephone: (212) 385-9700                *Attorneys for Defendants*
   *Attorneys for Plaintiffs*               *A Royal Flush of New York II, Inc.,*
   *German Sosa Cardoso and*                *A Royal Flush, Inc., William Malone*
   *Alexi Ortiz Alvarado*                   *and Debra Russo*

Dated:  April 15, 2016                   Dated:  April 15, 2016


**TIBBETTS, KEATING & BUTLER, LLC**


By:  /s/ Meredith McBride
   Meredith F. McBride
   9 East 45th Street 9th Floor
   New York, New York 10017
   Telephone: (212) 629-4119
   *Attorneys for Defendant*
   *Timothy Butler*

Dated:  April 15, 2016

EXHIBIT A

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is made by and between Plaintiffs German Sosa Cardoso and Alexi Ortiz Alvarado, on behalf of themselves, each of their heirs, estate, executors, administrators, representatives, attorneys, insurers, successors and assigns (hereinafter, collectively referred to as "Plaintiffs") and A Royal Flush of New York II, Inc. on behalf of the entity itself, its past and present parents, subsidiaries, affiliates, and any and all departments, divisions, and all past and present officers, directors, supervisors, managers, agents, owners, representatives, attorneys, employees, administrators, jointly and individually, including but not limited to, A Royal Flush, Inc., William Malone, Timothy Butler and Debra Russo (hereinafter collectively referred to as "ARF" or "Defendant").  Plaintiffs and ARF and hereinafter referenced together as the "Parties."

WHEREAS, plaintiffs filed a Complaint and Amended Complaint captioned, "*German Sosa Cardoso and Alexi Ortiz Alvarado, Individually and on behalf of all others similarly situated v. A Royal Flush of New York II, Inc., A Royal Flush, Inc., William Malone, Timothy Butler, and Debra Russo, jointly and severally*" in the United States District Court for the Southern District of New York and assigned Civil Action No. 1:15-cv-07260-ALC ("the Amended Complaint"), alleging the named defendants violated the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") in connection with plaintiffs' and purportedly similarly situated individuals' contractual relationships with ARF; and

WHEREAS, the individual defendants William Malone, Timothy Butler, and Debra Russo  (collectively referenced as the "Individual Defendants"), A Royal Flush of New York II, Inc., and A Royal Flush, Inc. have each denied any unlawful conduct or wrongdoing, and all liability; and

**WHEREAS**, the Parties wish to amicably resolve any and all disputes between them, and are entering into this Agreement for the purposes of avoiding the costs of litigation, and settling, compromising and resolving any and all claims that plaintiffs may have against defendants and any related entities, including all claims which were or could have been asserted in the Amended Complaint; and

**WHEREAS**, in exchange for their release of all liability and the voluntary dismissal of their claims with prejudice, ARF has agreed to provide plaintiffs with certain additional compensation and consideration which it is not otherwise obligated to provide and to which plaintiffs would not otherwise be entitled;

**NOW, THEREFORE**, in consideration of the execution of this Agreement and a Stipulation of Dismissal with Prejudice, and for other good and valuable consideration, the Parties agree as follows:

1. **Settlement Payment.** Within 30 days after ARF receives from plaintiffs the signed original of this Agreement and a completed Form W-9 for each plaintiff, plaintiffs' counsel, Pelton Graham LLC, and after the Court in which the Amended Complaint is pending ("the Court") enters the Order dismissing the Amended Complaint with prejudice and approving the settlement, ARF shall pay to plaintiffs, the total agreed-upon amount of Thirty Thousand Dollars and Zero Cents ($30,000.00) in three separate checks as follows:

   (a)    One check in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00) payable to "German Sosa Cardoso", for which a Form 1099 shall be issued to German Sosa Cardoso; and

   (b)    One check in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00) payable to "Alexi Ortiz Alvarado", for which a Form 1099 shall be issued to Alexi Ortiz Alvarado; and

   (c)    One check in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00) payable to "Pelton Graham LLC", for which a Form 1099

shall be issued to German Sosa Cardoso, Alexi Ortiz Alvarado, and Pelton & Associates PC.

The foregoing payments shall represent the full, final and complete settlement of all claims in the Amended Complaint by plaintiffs against ARF and all other released entities referenced below, including for any compensation, attorneys' fees, costs and expenses.

Plaintiffs agree that to the extent that any other federal, state or local taxes may be or become due or payable as a result of any of the above payments, they shall be solely responsible for paying them. Plaintiffs further agree that they have not relied upon any representation made by ARF or any of its representatives concerning the tax treatment of said payments. Plaintiffs shall indemnify ARF from, and hold it harmless against, any claims made by administrative agencies or courts of competent jurisdiction for such unpaid taxes, including any costs and counsel fees incurred by ARF as a result of any such claims.

2. **Full Payment and No Monies Owed.** Plaintiffs agree and affirm that the payments described in Paragraph 1 above constitute adequate consideration for the release of claims described in Paragraph 3, constitute the entire amount of monetary consideration provided to them and their legal counsel under this Agreement, and that neither plaintiffs nor their counsel will seek any further compensation for any other claimed damages, costs, disbursements, or attorneys' fees in connection with the Amended Complaint. Plaintiffs further agree and affirm that the payments provided for in Paragraph 1 constitute the entire, maximum, and only financial obligation of ARF to plaintiffs under this Agreement, and that they have been paid and/or have received all compensation to which they may be entitled.

3. **Release by Plaintiffs.** In consideration for ARF's commitment to the arrangements described herein, plaintiffs, for themselves and their agents, successors, heirs, executors, administrators and assigns, hereby irrevocably and unconditionally forever releases

and discharges ARF and all of its current and former predecessors, successors, parents, affiliates, benefit plans, insurers and assigns, and each of their current and former respective owners, directors, officers, shareholders, members, trustees, administrators, employees, representatives and agents, including but not limited to, William Malone, Timothy Butler, Debra Russo and A Royal Flush, Inc. (collectively, "the Releasees") from any and all actual or potential claims, demands, actions, causes of action or liabilities of any kind or nature, whether known or unknown, up to and including the date of this Agreement, which relate in any matter to the claims asserted in the Amended Complaint or any claims under the Fair Labor Standards Act or the New York Labor Law (the "Released Claims") or any claim for attorneys' fees, physical or emotional distress or injuries, punitive damages, compensatory damages, or any other duty or obligation of any kind or description related to the Released Claims, whether arising in law or equity, except for claims to enforce this Agreement.

Plaintiffs also acknowledge and agree that while this Release does not preclude them from filing a charge with the National Labor Relations Board, the Equal Employment Opportunity Commission or a similar state or local agency, or from participating in any investigation or proceeding with such an agency, they will not personally recover monies, and expressly waives the right to recover such monies, for any complaint or charge filed against the Releasees regarding any of the Released Claims, with any federal, state or local board, agency or court. Plaintiffs also acknowledge and agree that they are releasing and waiving all rights to opt into or join any class or collective action for wages against ARF with regard to any of the Released Claims, that they shall not join or voluntarily participate in any such action, and that they shall not personally recover any monies from such an action, and expressly waive the right to do so.

4

Plaintiffs further acknowledge and agree that with the payment referenced in Paragraph 1, they have been provided with and have received all leave, reinstatement and compensation to which they were legally entitled during their contractual relationship with ARF; and that they were not subjected to any improper treatment, conduct or actions as a result of a leave, reinstatement or compensation request.  Except for the Amended Complaint, plaintiffs hereby represent that no action, suit, complaint, claim, grievance, demand for arbitration or other proceeding is pending against Releasees in any court or other forum relating directly or indirectly to plaintiffs' contractual relationship with ARF, termination of the relationship, or otherwise. Plaintiffs represent that they have no claims pending against any of the Releasees, except for the Amended Complaint, and that they are not aware of any other claims against any of the Releasees that could have been asserted in the Amended Complaint.

4.      **Cooperation With Dismissal of Complaint.**   Plaintiffs agree to dismiss the Amended Complaint with prejudice and will execute, or direct their attorneys to execute, any further documents necessary to effectuate that dismissal.  Plaintiffs also agree to provide the utmost cooperation, and shall also direct their attorneys to provide the utmost cooperation, in any further actions necessary to secure the Court's approval of this settlement and/or Agreement.

5.      **No Future Employment/Contractual Relationship.**  Plaintiffs agree that they will not seek or accept employment, or work as an independent contractor or temporary worker, with the Releasees in the future, and that the Releasees are not in any way obligated to hire, employ, or retain them.  Plaintiffs also agree that if they are hired, employed or retained by the Releasees, their relationship with them may be immediately terminated, and that plaintiffs relieve them from all liability for doing so.

6.      **No Admission of Liability.**  Neither this Agreement nor anything contained in it shall be construed as an admission by ARF that it has in any respect violated or abridged any federal, state or local law or any right or obligation that it may owe or may have owed to plaintiffs.  Rather, the parties merely seek to amicably resolve any and all disputes between them.  Accordingly, this Agreement shall not be admissible as evidence against, or as an admission by, any party except that the Agreement may be introduced in any proceeding to enforce the Agreement.

7.      **Entire Agreement, Modification and Severability.**  This Agreement (including the Recitals) sets forth the entire agreement between the parties and fully supersedes any and all prior agreements or understandings, written or oral, between the parties pertaining to its subject matter.  The parties agree that this Agreement may not be modified, altered or changed except by a written agreement signed by the parties, and that if any provision of this Agreement is held to be invalid, the remaining provisions shall remain in full force and effect.

8.      **Enforcement.**  The parties agree that any action which is not consistent with any of the terms or obligations contained in this Agreement shall be deemed a material breach.  In addition to any and all other available remedies for the breach of any provision of this Agreement (none of which are waived in or by this Agreement), any party shall have the right to seek specific enforcement of this Agreement, except as to provisions which subsequently may be held invalid or unenforceable.

9.      **Controlling Law.**  This Agreement shall be governed by and construed in accordance with the substantive and procedural laws of the State of New York and shall be interpreted as neutral as between the parties, without regard to any presumptions, inferences or rules of construction based on the authorship of the Agreement.

10.     **Counterparts.** This Agreement may be executed in counterparts, each of which shall serve as an original as against any party who signed it, and all of which taken together shall constitute one and the same document.

11.     **Email or Facsimile.** A facsimile or e-mail copy of this Agreement will have the same force and effect as the original. Signatures on this Agreement that have been scanned, sent via facsimile or accurately photocopied shall have the same force and effect as the original

12.     **Review and Consideration.** Plaintiffs acknowledge that they have been provided with a reasonable time after receiving the Agreement to review and consider it, discuss it with an attorney of their own choosing, decide whether to sign it, and return if. If they choose to sign the Agreement before consulting with an attorney or without considering the Agreement, then they (1) expressly acknowledge that the Reseasees did not ask or require them to do so; and (ii)_they expressly waive any claim that they did not have a reasonable time period to consider it. Plaintiffs confirm that, if necessary, this Agreement has been translated to them in Spanish and that they understand the terms of this Agreement and that they are signing this Agreement voluntarily.

13.     **Voluntary Execution.** Plaintiffs acknowledge and agree that they:

(a)     have carefully read and fully understand all of the provisions of this Agreement;

(b)     knowingly and voluntarily agree to all of the terms set forth in this Agreement;

(c)     knowingly and voluntarily intend to be legally bound by this Agreement;

(d)     are receiving consideration in addition to anything of value to which they are already entitled;

(e)     are hereby advised in writing to consult with an attorney and carefully consider the terms of this Agreement prior to signing this Agreement;

(f)     have not been coerced, threatened, or intimidated in any way into signing this Agreement.

NOW, THEREFORE, by signing below, the Parties have executed this Agreement freely and voluntarily and accept and agree to the provisions contained in it.

**THIS IS A LEGAL AGREEMENT AND RELEASE/WAIVER OF CLAIMS
READ CAREFULLY BEFORE SIGNING**

_____        Dated: 04/14/2016
German Sosa Cardoso

_____        Dated: 04-14-2016
Alex Ortiz Alvarado

A Royal Flush of New York II, Inc.

By:_____        Dated:_____
        William Malone

Firmwide:139386725.4 085118.1002

8

(e)     are hereby advised in writing to consult with an attorney and carefully consider the terms of this Agreement prior to signing this Agreement;

(f)     have not been coerced, threatened, or intimidated in any way into signing this Agreement.

NOW, THEREFORE, by signing below, the Parties have executed this Agreement freely and voluntarily and accept and agree to the provisions contained in it.

**THIS IS A LEGAL AGREEMENT AND RELEASE/WAIVER OF CLAIMS
READ CAREFULLY BEFORE SIGNING**

_____     Dated:_____
German Sosa Cardoso

_____     Dated:_____
Alexi Ortiz Alvarado

A Royal Flush of New York II, Inc.

By: _____     Dated: \_\_4/14/16_____
        William Malone

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GERMAN SOSA CARDOSO and ALEXI ORTIZ
ALVARADO, Individually and on Behalf of All
Others Similarly Situated,

     Plaintiffs,

   -against-

A ROYAL FLUSH OF NEW YORK II, INC.,
A ROYAL FLUSH, INC., WILLIAM
MALONE, TIMOTHY BUTLER, and DEBRA
RUSSO, Jointly and Severally,

     Defendants.

---

Civil Action No. 1:15-cv-07260-ALC


**PROPOSED ORDER**

VIA ECF

---

AND NOW, THIS __ DAY OF _____ 2016, the Court having reviewed the case of

*German Sosa Cardoso and Alexi Ortiz, individually and on behalf of all others similarly situated*

*v. A Royal Flush of New York II, Inc., A Royal Flush, Inc., William Malone, Timothy Butler and*

*Debra Russo*, and considered applicable case law, and for good cause shown, it is **ORDERED**,

**ADJUDGED** and **DECREED** that:

   1.  The individual Settlement Agreement and General Release between Plaintiffs

German Sosa Cardoso and Alexi Ortiz Alvarado and Defendants A Royal Flush of New York II,

Inc., a Royal Flush, Inc. (collectively "A Royal Flush" or the "Company") (together, the

"Parties"),: (a) is fair to all Parties; (b) reasonably resolves a bona fide disagreement between the

Parties with regard to the merits of the Plaintiffs' claims; and (c) demonstrates a good faith

intention by the Parties that the Plaintiffs' claims for liability and damages be fully and finally

resolved, and not re-litigated in whole or in part at any point in the future.  The Agreement is

therefore **APPROVED** by the Court.

2.      The lawsuit and the claims of Plaintiffs German Sosa Cardoso and Alexi Ortiz Alvarado against and Defendants A Royal Flush of New York II, Inc., a Royal Flush, Inc. (collectively "A Royal Flush" or the "Company"), William Malone, Debra Russo and Timothy Butler (collectively, "Defendants") are **DISMISSED WITH PREJUDICE** in their entirety without fees or costs except as agreed to by the Parties.


**PELTON GRAHAM LLC**                     **LITTLER MENDELSON, P.C.**


By:  _/s/ Brent E. Pelton_____        By:  _/s/ Michael T. Grosso_____
     Brent E. Pelton                           Michael T. Grosso
     Taylor B. Graham                          One Newark Center, 8th Floor
     111 Broadway, Suite 1503                  Newark, NJ  07102
     New York, NY 10006                        Telephone: (973) 848-4700
     Telephone: (212) 385-9700                 *Attorneys for Defendants*
     *Attorneys for Plaintiffs*                *A Royal Flush of New York II, Inc.,*
     *German Sosa Cardoso and*                 *A Royal Flush, Inc., William Malone*
     *Alexi Ortiz Alvarado*                    *and Debra Russo*

Dated:  April 15, 2016                    Dated:  April 15, 2016

**TIBBETTS, KEATING & BUTLER, LLC**


By:  _/s/ Meredith McBride_____
     Meredith F. McBride
     9 East 45th Street 9th Floor
     New York, New York 10017
     Telephone: (212) 629-4119
     *Attorneys for Defendant*
     *Timothy Butler*

Dated:  April 15, 2016

**SO-ORDERED:**


                                          Dated: _____
_____
HONORABLE ANDREW L. CARTER, JR.
UNITED STATES DISTRICT JUDGE